IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| AUTOMOTIVE PROFESSIONALS, INC., | ) | |
| | ) | Case No. 07 B 06720 |
| Debtor. | ) | |
| | ) | |
| | ) | Judge Carol A. Doyle |
| FRANCES GECKER, not individually but as | ) | |
| Chapter 11 Trustee of the bankruptcy estate of | ) | |
| Automotive Professionals, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 08 A 00218 |
| | ) | |
| GOLDMAN SACHS & CO. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Frances Gecker, the chapter 11 trustee in the bankruptcy case of Automotive Professionals Inc. ("API"), filed this adversary proceeding against Goldman Sachs & Co. She alleges claims to avoid Goldman's lien on various financial accounts of API and to equitably subordinate Goldman's secured claim. She also asserts claims for misrepresentation and equitable estoppel. The trustee has moved to strike two of Goldman's affirmative defenses: that the trustee's claim for equitable subordination is barred by the doctrine of unclean hands, and that the trustee lacks standing to pursue three claims brought on behalf of New York consumers. The trustee argues that the doctrine of unclean hands does not apply to her, and that, as assignee of the rights of the New York Superintendent of Insurance, she has standing to pursue tort claims on behalf of New

York consumers. For the reasons stated below, the trustee's motion is granted with respect to the unclean hands defense and denied with respect to standing.

I.  **Background**

API sold vehicle service contracts to consumers who purchased cars. API put part of the money it received under the contracts into reserve accounts to be used to pay for car repairs. API deposited some of its reserve money into accounts with Goldman. API then borrowed approximately $4 million from Goldman to fund API's operations (and for other purposes) and gave Goldman a security interest in the reserve accounts.

The trustee filed a seven-count complaint against Goldman. She alleges that Goldman's lien is invalid under state law (Count 1) or that it should be avoided as a fraudulent transfer (Counts 2 and 3). She also seeks to equitably subordinate Goldman's claim under § 510(c) of the Bankruptcy Code (Count 7). Finally, she asserts claims of fraudulent misrepresentation, negligent misrepresentation, and equitable estoppel (Counts 4, 5 and 6). These last three claims are brought by the trustee as assignee of the rights of the New York Superintendent of Insurance on behalf of New York consumers.

Goldman asserted a number of affirmative defenses to the complaint, including that the debtor's unclean hands bar the trustee's claim for equitable subordination (third affirmative defense), and that the trustee lacks standing to bring tort claims on behalf of consumers in New York (fifth affirmative defense). The trustee moved to strike both of these affirmative defenses on the basis that neither is viable as a matter of law.

2

## II.   Standard on Motion to Strike an Affirmative Defense

Rule 8(c) of the Federal Rules of Civil Procedure, applicable through Rule 7008(a) of the Federal Rules of Bankruptcy Procedure, requires a party to set forth affirmative defenses in a responsive pleading. Fed. R. Bankr. P. 7008(a). Motions to strike affirmative defenses are governed by Rule 12(f) of the Federal Rules of Civil Procedure, which applies to adversary proceedings under Rule 7012 of the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 7012(b). Rule 12(f) allows the court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Although courts generally disfavor motions to strike affirmative defenses, a motion to strike can be an important means of removing "unnecessary clutter" from a case and avoiding delay. Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989); see also Williams v. Jader Fuel Co., Inc., 944 F.2d 1388, 1400 (7th Cir. 1991). Courts should strike affirmative defenses "only when they are insufficient on the face of the pleadings." Williams, 944 F.2d at 1400. The court must consider all well-pleaded allegations in the defenses to be true, draw reasonable inferences in favor of the defendant, and grant the motion to strike only if it appears beyond doubt that the defendant cannot prove any set of facts in support of its defense that would bar the plaintiff from relief. Id. at 1400.

## III.   Unclean Hands and Equitable Subordination

In Count 7, the trustee alleges that Goldman's secured claim should be equitably subordinated because Goldman engaged in inequitable conduct that harmed other creditors. Among other things, she alleges that Goldman took a security interest in certain API reserve

3

accounts even though Goldman knew that others asserted rights in those accounts. The trustee also alleges that Goldman made affirmative misrepresentations to the New York Superintendent of Insurance regarding Goldman's security interest in the account reserved for payment of claims of New York consumers. The trustee contends that Goldman's inequitable conduct injured other API creditors, and that its claim therefore should be equitably subordinated.

Goldman alleges as an affirmative defense that API has unclean hands because it breached its duty to disclose to Goldman that any other party had an interest in API's accounts and that there were restrictions on the transfer of API's assets. The trustee moved to strike this affirmative defense, arguing that, as a matter of law, the debtor's unclean hands cannot be applied to her. Goldman responded that unclean hands is a viable defense, but that the issue should not be decided until the factual record in the case is complete. The court agrees with the trustee that the debtor's unclean hands is not a valid defense to the trustee's action for equitable subordination.

### A.    Equitable Subordination

Section 510(c) of the Bankruptcy Code authorizes the bankruptcy court to subordinate the claim of a creditor who has engaged in inequitable conduct that has harmed other creditors. 11 U.S.C. § 510(c). It provides: "[A]fter notice and hearing, the court may (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest . . . ." This provision codifies pre-Code case law regarding equitable subordination. U.S. v. Noland, 517 U.S. 535, 537-39 (1996); Pepper v. Litton, 308 U.S. 295, 304

(1939); In re Missionary Baptist Found. of Am., 818 F.2d 1135, 1142 (5th Cir. 1987); In re Kelton Motors Inc., 121 B.R. 166, 189-190 (Bankr. D. Vt. 1990).

Equitable subordination moves a creditor's claim down in the order in which creditors are paid from the bankruptcy estate, usually reducing or eliminating the amount the creditor will recover. As the Seventh Circuit Court of Appeals recently noted, "[e]quitable subordination allows the bankruptcy court to reprioritize a claim if it determines that the claimant is guilty of misconduct that injures other creditors and confers an unfair advantage on the claimant." In re Kreisler, __ F.3d __, __, No. 06-3881, 2008 WL 4613880, *2 (7th Cir. Oct. 20, 2008). The court identified the three traditional factors for determining whether equitable subordination is appropriate: (1) whether the creditor engaged in inequitable conduct; (2) whether the conduct resulted in injury to other creditors or an unfair advantage for the claimant; and (3) whether subordination of the debt would be inconsistent with other Bankruptcy Code provisions. Id.

The Kreisler decision makes clear that equitable subordination is appropriate only when the wrong-doing of a creditor harms innocent creditors. In Kreisler, two debtors in related chapter 7 cases formed a corporation that bought the secured claims of the debtors' principal creditors. The bankruptcy court found that this constituted misconduct justifying subordination of the purchased secured claims. Reversing, the court of appeals emphasized that equitable subordination is permitted only when the creditor's misconduct harms other creditors. The court concluded that, although the debtors may have engaged in misconduct, that misconduct did not prejudice the other creditors because they were no worse off than they were when the original secured creditors held the claims. "Only misconduct that harms other creditors will suffice[.]" Id. at *3.

B. **Unclean Hands**

The affirmative defense of unclean hands is inconsistent with the narrow focus of equitable subordination on the wrongful acts of a creditor harming innocent creditors. The three-part test for equitable subordination discussed above focuses only on the actions of guilty creditors and the resulting impact on innocent creditors. Inequitable conduct by the debtor is noticeably absent from the list of relevant considerations. This focus on the actions of the creditor to be subordinated, not the debtor, makes sense because the debtor does not stand to gain or lose from equitable subordination – it simply rearranges the order in which creditors will be paid from the estate. In this creditor-versus-creditor analysis, the debtor's actions should be irrelevant.

Courts have consistently subordinated claims even when the debtor was integrally involved in giving the creditor unfair advantage. These cases frequently involve insiders who exert improper influence over a debtor to give unfair advantages to favored creditors. E.g., Pepper v. Litton, 308 U.S. 295 (1939) (controlling shareholder's claims against corporation subordinated where shareholder caused corporation to avoid paying other creditors); In re Lifschultz Fast Freight, 132 F.3d 339, 343 (7th Cir. 1997) (stating that "equitable subordination typically involves closely-held corporations and their insiders"); Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting, 908 F.2d 1351, 1356 (7th Cir. 1990) (noting that "equitable subordination usually is a response to efforts by corporate insiders to convert their equity interests into secured debt in anticipation of bankruptcy"); Koch Refining v. Farmers Union Cent. Exchange, Inc., 831 F.2d 1339, 1350 (7th Cir. 1987) (explaining why subordination is frequently used against insiders who have controlled the corporation in order to prejudice other creditors). Holt v. F.D.I.C. (In re CTS Truss, Inc.), 868 F.2d 146, 148-149 (5th Cir. 1989) (noting that categories of cases in which

6

equitable subordination is appropriate includes those where a fiduciary or third party effectively controls the debtor to the disadvantage of other creditors). The large body of cases in which courts have subordinated claims even when a debtor has been involved in wrongdoing supports the conclusion that the unclean hands of a debtor is not a viable defense to equitable subordination.

In fact, barring equitable subordination when the debtor is involved in inequitable conduct toward a creditor could defeat the purpose of § 510(c) by allowing the creditor who gained an unfair advantage to retain its ill-gotten priority because the debtor also committed bad acts. Nothing in the language of § 510(c), which codifies a pre-Code equitable doctrine, mandates such an anomalous result. If Congress intended such a change, it would have said so instead of simply allowing courts to subordinate "under principles of equitable subordination." 11 U.S.C. §510(c).

### C.     Case Law Regarding Unclean Hands and Equitable Subordination

Only two reported decisions have directly addressed whether unclean hands is a valid defense to a claim for equitable subordination, and they reached different conclusions. In the first, Stanziale v. Pepper Hamilton LLP (In re Student Finance Corp.), 335 B.R. 539 (D. Del. 2005), the court held that unclean hands did not bar a claim for equitable subordination under § 510(c). The court recognized that the defense of unclean hands may apply to a trustee's claims under non-bankruptcy law, but the court concluded that a debtor's inequitable conduct should not be imputed to a Chapter 7 trustee seeking to equitably subordinate a claim. Id. at 555.

In the second decision, the court reached the opposite conclusion. In Granite Partners, L.P. v. Bear, Stearns & Co., Inc., 17 F. Supp. 2d 275 (S.D.N.Y. 1998), the court barred a claim for

equitable subordination based on the debtor's unclean hands. A litigation board appointed under a confirmed chapter 11 plan took over the trustee's lawsuit against broker dealers alleging various state law claims and a claim for equitable subordination. The court concluded that the doctrine of *in pari delicto* applied to the board's claim for breach of fiduciary duty against the broker-dealers seeking sought ordinary damages from a third party based on state law. Id. at 308. The Granite Partners court also dismissed a claim for equitable subordination because of the debtor's unclean hands. It relied only on equitable principles of New York law and a case in which a creditors' committee's claim of unjust enrichment was defeated because of the debtor's unclean hands. Id. at 310 (citing In re Mediators, 190 B.R. 515 (S.D.N.Y. 1995)).

The Granite Partners court's conclusion that a debtor's unclean hands can bar an action for equitable subordination under § 510(c) of the Bankruptcy Code is unsupported and unpersuasive. The court failed to recognize the important difference between a trustee suing on behalf of a debtor based on non-bankruptcy law and a trustee asserting causes of action created under the Bankruptcy Code. Under § 541 of the Bankruptcy Code, 11 U.S.C. § 541(a), all of a debtor's pre-petition causes of action based on non-bankruptcy law become assets of the estate when the petition is filed. If a trustee asserts such a claim (e.g., a contract or tort claim), he stands in the shoes of the debtor and is subject to all defenses that could be asserted against the debtor outside of bankruptcy. See, e.g., Knauer v. Jonathan Roberts Fin. Group, Inc., 348 F.3d 230 (7th Cir. 2003) (*in pari delicto* doctrine barred tort claims). If a defendant could have raised the defense of unclean hands outside of bankruptcy, he can generally assert the defense against the trustee as well (though there are exceptions under state law to this general rule, as discussed below). Grassmueck v. Am. Shorthorn Ass'n, 402 F.3d 833, 836-37 (8th Cir. 2005) (trustee barred from

pursuing negligence claim against third party based on *in pari delicto* defense); Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147 (2nd Cir. 2003) (*in pari delicto* barred creditors' committee's claims for breach of fiduciary duty); In re Granite Partners, LLP (Goldin v. Primavera Familienstiftung, Tag Associates, Ltd.) 194 B.R. 318 (Bkrtcy S.D.N.Y 1996) (doctrine of *in pari delicto* barred trustee from bringing claims for breach of fiduciary duty, common law fraud, and misrepresentation).

When a trustee asserts a cause of action created under the Bankruptcy Code, however, the defenses available are a matter of federal law. State law defenses do not automatically apply to these statutory causes of action. Instead, courts rely on the rules of statutory construction and pre-Code law to determine whether any defenses not set forth in the Bankruptcy Code apply. See, e.g., Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 10-11 (2000) (discussing the role of pre-Code principles in interpreting provisions of the Bankruptcy Code); Bank of America Nat. Trust and Sav. Ass'n v. 203 North LaSalle St. P'ship, 526 U.S. 434, 460-63 (1999); Dewsnup v. Timm, 502 U.S. 410, 419 (1992).

Courts generally have not applied common law equitable defenses to causes of action created under Chapter 5 of the Bankruptcy Code.[1] For example, courts do not recognize state law equitable defenses to actions to avoid preferential transfers under § 547 and fraudulent transfers under § 548. In re Personal and Bus. Ins. Agency, 334 F.3d 239, 245-47 (3rd Cir. 2003) (holding

---

[1] The only exception is with respect to §544(b), which allows a trustee to assert the claims of a creditor and specifically incorporates state law. Belfance v. Bushey (In re Bushey), 210 B.R. 95, 100 (B.A.P. 6th Cir. 1997) ("It is often said that the trustee 'stands in the shoes' of the creditor, subject to any defenses that could be asserted against the creditor."); Sender v. Simon, 84 F.3d 1299, 1305 n.5 (10th Cir. 1996) (discussing the trustee's power to bring causes of action under § 541 and stating that § 541 and § 544(b) are "mirror images of one another").

9

that the doctrine of *in pari delicto* does not apply to a trustee bringing an action under § 548) (citing Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 356-358 (2001)); Corzin v. Fordu (In re Fordu), 209 B.R. 854, 863 (B.A.P. 6th Cir. 1997) (noting that "courts have consistently recognized that the Trustee may pursue fraudulent or preferential transfers despite the fact that the debtor was a knowing and willing participant to such conveyances"); Kmart Corp. v. Uniden Am. Corp. (In re Kmart Corp.), 318 B.R. 409 (Bankr. N.D. Ill. 2004) (holding that unclean hands is not a valid defense to a preference action under § 547(c) of the Bankruptcy Code because the list of exceptions enumerated in that section is exclusive).

There is no justification for applying the common law defense of unclean hands to a claim for equitable subordination under § 510(c). To the contrary, as noted above, permitting this defense would be inconsistent with the traditional test for equitable subordination, the substantial case law allowing subordination despite debtors' participation in wrongdoing, and the purpose of equitable subordination.

Although the Seventh Circuit has not ruled on the issue, its interpretation of Illinois and Indiana law is consistent with the conclusion that unclean hands is not a valid defense to a claim for equitable subordination. In Scholes v. Lehman, et al., 56 F.3d 750 (7th Cir. 1995), the court held that the defense of unclean hands did not apply in an action to recover a fraudulent transfer because a receiver had taken over control of a corporation involved in a Ponzi scheme. The court noted that, under Illinois law, a party who makes a fraudulent transfer generally cannot undo the transfer because he must not be allowed to profit from his own wrongdoing. The Scholes court concluded, however, that the appointment of a receiver removed the wrongdoer from the scene

and eliminated the prohibition on undoing the transfer. "The defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is eliminated." Id. at 754. The court emphasized that the creditor-investors "were not complicit in [the] fraud; they were its victims." Id. Thus, under Illinois law, bad acts by a transferor/debtor are irrelevant when a receiver is suing to recover assets for the benefit of innocent creditors. The same reasoning supports the conclusion that unclean hands does not apply to a claim for equitable subordination - the bad acts of the debtor should not prevent subordination that will benefit innocent creditors, not the debtor.

In a later decision, the Seventh Circuit applied *in pari delicto* to a receiver based on Indiana law. In Knauer v. Jonathan Roberts Fin. Grp., Inc., 348 F.3d 230, 231-38 (7th Cir. 2003), the court held that *in pari delicto* applied to bar a receiver who brought tort claims against broker dealers of corporations that had operated a Ponzi scheme. The court stated that a receiver who brings claims on behalf of a corporation is generally subject to the defenses that the defendant would have against the corporation. Id. at 235-36. The court recognized an exception to this general rule that "allows receivers to avoid transactions that violate the rights of creditors," i.e., fraudulent transfers. Id. at 236. But the exception did not apply in Knauer because the trustee was suing in tort, not to recover assets for the benefit of all creditors. The court therefore applied the doctrine of *in pari delicto* to the receiver. This decision is consistent with Scholes and the principle discussed above that state law defenses generally apply to trustees asserting state law claims. Knauer provides no support for Goldman's contention that unclean hands applies to equitable subordination.

Goldman has failed to present any persuasive authority or rationale for permitting the unclean hands of the debtor to bar the subordination of a debt owed to a creditor who has

11

improved his position against other innocent creditors through inequitable conduct. The court concludes that unclean hands is not a viable defense to an action for equitable subordination as a matter of law. Goldman's third affirmative defense of unclean hands will therefore be stricken.

### IV. Trustee's Standing to Pursue Tort Claims on Behalf of New York Contract Holders

In its fifth affirmative defense, Goldman alleges that the trustee has no standing to pursue the tort claims for money damages on behalf of contract holders in New York alleged in Counts 4, 5, and 6 of the complaint. The trustee brings these claims as assignee of the rights of the New York Superintendent of Insurance.

The New York service contract act ("Act") regulates the sale of service contracts in the state. N.Y. Ins. Law § 7901 *et seq.* (McKinney 2008). The vehicle service contracts sold by API are covered by the Act. The Act requires a service contract provider to comply with one of three financial requirements. Id. at § 7903(c). API chose the option of maintaining a reserve account containing at least forty percent of the money received from the sale of the contracts. Id. at § 7903(c)(1). The New York Superintendent of Insurance is charged with enforcing the Act. Id. at § 7910.

In April 2008, the trustee and the Superintendent entered into an agreement in which the Superintendent assigned to the trustee all of his right, title, and interest in API's New York reserve account. The assignment included all of the Superintendent's claims and causes of action related to the account. The New York reserve account is one of the accounts in which Goldman asserts a security interest.

In Counts 4, 5, and 6 of the complaint, the trustee asserts claims of fraudulent misrepresentation, negligent misrepresentation, and equitable estoppel on behalf of New York consumers and the Superintendent. She alleges, among other things, that Goldman knowingly or negligently misrepresented to the Superintendent that the New York reserve account was unencumbered, that the Superintendent reasonably relied on this misrepresentation, and that New York contract holders and the Superintendent have incurred damages as a result.

In her motion to strike, the trustee argues that she has standing to assert these claims because the Superintendent assigned his causes of action to her. Goldman disagrees, asserting that because the Superintendent has no standing to assert these claims on behalf of New York service contract holders, the trustee also lacks standing. Goldman contends that the Superintendent's enforcement powers are limited to addressing violations of the Act or liquidating the service contract provider, and that these tort claims do not fall within the scope of those powers. The trustee responds that the Act confers on the Superintendent the standing to assert these tort claim on behalf of New York consumers and on his own behalf.

The trustee relies on two provisions of the Act to support her position that the Superintendent has standing to bring tort claims on behalf of New York contract holders: §§ 7910(b) and 7910(b)(2) of the Act. Both provisions, however, limit the Superintendent to redressing violations of the Act. Neither authorizes the Superintendent to assert tort claims against a party like Goldman who has not violated the Act.

Section 7910, entitled "Enforcement provisions," defines the scope of the Superintendent's powers to enforce the Act. N.Y. Ins. Law § 7910 (McKinney 2008). Subsection (a) allows the Superintendent to conduct investigations and examinations to enforce the Act and

13

protect contract holders in New York. Id. at § 7910(a). Subsection (b) confers additional powers. It authorizes the Superintendent to "take action which is necessary or appropriate to enforce the provisions of this article and the superintendent's regulations and orders, and to protect service contract holders in this state." Id. at § 7910(b). The first clause in section (b) allowing the Superintendent to take action to "enforce the provisions of this article" obviously applies only when there is a violation of the Act. The second clause in subsection (b) allowing him to take action "to protect service contract holders in this state" is not expressly limited to addressing violations of the Act. That phrase, however, does not appear to grant powers to the Superintendent beyond addressing violations of the Act. Instead, it appears merely to be an explanation of the goal of the enumerated enforcement powers -- to protect service holders in New York.

Subsection (b) introduces a series of provisions setting forth specific actions the Superintendent may take to enforce the Act beyond the investigations authorized in subsection (a). Subsection (b)(1) gives the Superintendent the power to issue cease and desist orders to contract providers violating the Act. Id. at § 7910(b)(1). It also creates the procedures that govern any such orders. Id. at § 7910(A), (B), and (C). And subsection (b)(2) gives the Superintendent the right to bring an action for an injunction against threatened or existing violations of the Act and to seek restitution on behalf of persons aggrieved by a violation of the Act. Id. at § 7910(b)(2).

Subsection (b)(3) does provide that the Superintendent's authority under this section is in addition to any other authority of the Superintendent. Id. at § 7910(b)(3). Section 7903(a), however, provides that the sale and administration of service contracts is exempt from any other provisions of "this chapter," meaning the New York insurance code. Id. at § 7903(a). Thus, the

reference to "other authority" of the Superintendent in subsection (b)(3) does not appear to expand the powers of the Superintendent with respect to the Act beyond those identified in § 7910. Instead, subsections (a) and (b) of § 7910 provide the full range of enforcement powers available to the Superintendent, and those powers are limited to addressing violations of the Act. The court therefore does not interpret the language in subsection (b) permitting the Superintendent to take action "to protect service contract holders in this state" to authorize him to take actions other than those specifically enumerated in § 7910. That section does not permit the Superintendent to sue parties who have not violated the Act.

The trustee also relies on § 7910(b)(2) as a basis for the Superintendent's standing to bring tort claims on behalf of New York consumers against Goldman.  Section 7910(b)(2) provides: "The superintendent may bring an action in any court of competent jurisdiction to enjoin threatened or existing violations of this article or of the superintendent's orders or regulations. An action filed under this paragraph may also seek restitution on behalf of persons aggrieved by a violation of this article or orders or regulations of the superintendent." Id. at § 7910(b)(2). The trustee argues that this provision gives the Superintendent the right to seek restitution from Goldman because, she contends, Goldman's lien violates § 7903 of the Act and the Superintendent's regulations regarding reserve accounts.

Section 7910(b)(2), however, only gives the Superintendent the right to enjoin violations of the Act and to seek restitution on behalf of persons "aggrieved by a violation" of the Act or regulations. Id. There is no right to sue absent a violation of the Act. The trustee cites no case authority to support her position that the Superintendent has standing to sue for anything other than a violation of the Act. Goldman is not a vehicle service contract provider; it merely did

15

business with one. It therefore had no obligations under the Act. Although the trustee asserts that the Act has been violated by virtue of the Goldman lien, she does not contend, and cannot credibly contend, that Goldman itself violated the Act. If any party violated the Act or the Superintendent's regulations regarding reserve accounts, it was API. Section 7910(b)(2) does not give the Superintendent the right to bring a tort claim, or any other kind of claim, on behalf of New York service contract holders against a party like Goldman who has not violated the Act.

The trustee also argues that the Superintendent has standing to bring the three tort claims alleged in Counts 4, 5, and 6 on his own behalf as well as on behalf of New York consumers. She contends that Goldman's concealed lien frustrated the Superintendent's efforts to enforce the Act. Goldman has not argued that the Superintendent lacks standing to sue in his own right, so the court will not address this argument. Goldman's fifth affirmative defense challenges only the standing of the trustee to sue on behalf of New York consumers. Because the Superintendent does not have standing to assert the claims alleged in Counts 4, 5, and 6 on behalf of New York contract holders, the trustee's motion to strike the fifth affirmative defense is denied.

### Conclusion

For the reasons stated above, the court grants the trustee's motion to strike Goldman's third affirmative defense of unclean hands, but denies the trustee's motion to strike the fifth

affirmative defense alleging that the trustee lacks standing to sue on behalf of New York service contract holders.

Dated: December 2, 2008

ENTERED:

_____
CAROL A. DOYLE
United States Bankruptcy Judge